**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jorge Herberto Moreno, | No. CV-15-08312-PCT-SRB (JZB) |
| Plaintiff, | **ORDER** |
| v. | |
| Charles Ryan, et al., | |
| Defendants. | |

On December 31, 2015, Plaintiff, who is confined in the Special Management Unit I (SMU I), in Florence, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc. 1.) On February 17, 2016, the Court screened the Complaint and ordered Defendant Marshall to answer Count One. (Doc. 5.) The Court dismissed the remaining Defendants and claims without prejudice.

Pending before the Court is Plaintiff's Motion for Leave to File his First Amended Complaint, and Plaintiff's lodged proposed First Amended Complaint. (Docs. 37, 38.) For the reasons below, the Court will grant Plaintiff's Motion to Amend and, after screening, will order Defendant Marshall to answer Count One of the First Amended Complaint and dismiss the remaining Defendants and claims.

**I. Plaintiff's Motion to Amend**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P 15(a)(2). In accordance with the Local Rules of Civil Procedure, Plaintiff lodged a proposed First

Amended Complaint. (Doc. 38.) The Court finds that Plaintiff's Motion to Amend is timely as it was filed prior to the Court's deadline for amending pleadings. (Docs. 31, 37, 38.) Therefore, the Court will grant Plaintiff's Motion to Amend and order the Clerk of Court to file Plaintiff's First Amended Complaint, lodged at Doc. 38.

**II.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681. But, as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338,

342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

### III. Plaintiff's First Amended Complaint

In his Three-Count First Amended Complaint, Plaintiff sues the Arizona Department of Corrections (ADC), as well as the following current or former employees of the ADC: Director Charles Ryan; Sergeant Marshall; Lieutenant Greene; Deputy Warden (DW) Pruett; Corrections Officer (CO) IV Branch; Assistant DW Rode; DW Hemsley; and Sergeant Trotti.

In Count One, Plaintiff asserts excessive use of force and Fourth Amendment claims. More specifically, Plaintiff asserts that on July 2, 2013, Marshall sexually assaulted him by repeatedly strip searching him. Plaintiff claims that during one of the strip searches, Marshall, with a flashlight in hand, focused on Plaintiff's buttocks. After Plaintiff refused to comply five times, Marshall told Plaintiff "I want to see your asshole," "show me you're asshole." Plaintiff claims that Marshall told Plaintiff he was "on disciplinary" for refusing to comply. Plaintiff also appears to assert Marshall then gave Plaintiff his clothes, but moved the flashlight closer to Plaintiff's buttocks.

Plaintiff alleges that he was taken to Greene for disobeying orders. At that time, Plaintiff asserts, he complained to Greene about Marshall's "sexual assault," to which Greene responded by ordering Plaintiff to strip again "or go to defecation watch." Plaintiff claims Greene's conduct violates the Prison Rape Elimination Act (PREA).[1] Plaintiff asserts that Sergeant Trotti subsequently witnessed Marshall "sexually assault" Plaintiff two more times. Plaintiff claims that the exposure to the flashlight caused Plaintiff's hemorrhoids to flare up for up to two weeks.

Also in Count One, Plaintiff asserts that the ADC is liable for its employees'

---

[1] PREA, 42 U.S.C. §§ 15601-609, provides for the reporting of incidents of rape in prison and the allocation of grants and creation of a study commission, but it does not give rise to a private cause of action. *Bell v. County of Los Angeles*, No. CV07-8187, 2008 WL 4375768, at *6 (C.D. Cal. Aug 25, 2008); *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug 12, 2008).

conduct, including Marshall's conduct. Plaintiff further claims that the ADC employs witnesses to be deposed and houses inmate witnesses that "need to be made available." Finally, Plaintiff asserts that the ADC was "deliberately indifferen[t]" towards Plaintiff by providing "poor training" and failing to protect Plaintiff from Marshall's conduct.

In Count Two, Plaintiff asserts Eighth Amendment and retaliation claims against Ryan, Greene, Trotti, and Pruett. Plaintiff claims that Ryan was aware of "the crimes committed against" Plaintiff, but failed to protect Plaintiff. Plaintiff further asserts that Ryan "created an environment of impunity from prosecution and retaliatory behavior, which [has] resulted in the ongoing retaliation 4 years after being sexually assaulted in July 2, 2013." Finally, Plaintiff claims that Ryan was "deliberately indifferent" to Plaintiff's well-being by not properly training staff according to the PREA.

With regard to Greene, Plaintiff asserts that he was deliberately indifferent to Plaintiff in that as a supervisor of Marshall, "he failed in his duties to protect Plaintiff who was in the care and custody and a vulnerable adult were reckless in exposing Plaintiff to further sexual assaults by his permission." Plaintiff claims that the PREA "guidelines prohibit any further contact between Marshall and Plaintiff" once Plaintiff made a complaint to Greene of sexual assault.

With regard to Trotti, Plaintiff claims that he witnessed two subsequent strip searches by Marshall of Plaintiff "for no obvious reason," and had an obligation to report the conduct to Greene or other supervisors under the PREA, but did not do so.

Finally, with regard to Pruett, Plaintiff asserts that he retaliated against Plaintiff "by her response" to Plaintiff's grievance regarding Plaintiff's sexual assault. Plaintiff also asserts that he lost his visits for nine months and he was put in the "Hole (CDU)" two months after the incident with Marshall.

In Count Three, Plaintiff asserts Eighth Amendment and retaliation claims against Branch, Rode, and Hemsley. Plaintiff asserts that Branch "had full knowledge of the sexual assault," but ignored the PREA, hindered the prosecution of Marshall and Greene, and failed to protect Plaintiff. Plaintiff alleges her "callous indifference" resulted from a

"lack of training." Plaintiff asserts Rode "violated Plaintiff's equal protection and due process rights, and retaliated against . . . Plaintiff, by issuing Plaintiff disciplinary sanctions for assaulting six inmates, even though ADW Rode knew that Plaintiff was the victim of the assault by the six inmates." Plaintiff claims Rode's "actions were pre-planned to protect those 6 inmates and raise my custody level without cause and justify the assault." Finally, with regard to Hemsley, Plaintiff asserts that he retaliated against Plaintiff by denying him a kitchen job, making Plaintiff "max custody," and approving Plaintiff's move to a restricted program. Plaintiff claims that "[t]his shows the ongoing retaliatory behavior 4 years after the sexual assault at another complex another city hundreds of miles away."[2]

### IV. Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

In addition, to state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions [to] show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). There is no respondeat superior liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights, absent more, does not make him liable. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691

---

[2] Plaintiff also references the Federal Tort Claims Act (FTCA) in each Count of his First Amended Complaint. However, he does not assert any additional factual allegations specific to those claims, other than the complained of conduct by Defendants is "not part of their job description[s]." (Doc. 38 at 7.)

(1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his personal capacity "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045.

Further, where a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *accord Proctor v. Applegate*, 661 F. Supp. 2d 743, 765 (W.D. Mich. 2009); *Stocker v. Warden*, No. 1:07-CV-00589, 2009 WL 981323, at *10 (E.D. Cal. Apr. 13, 2009); *Mintun v. Blades*, No. CV-06-139, 2008 WL 711636, at *7 (D. Idaho Mar. 14, 2008); *see also Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (a plaintiff must allege that a supervisor defendant did more than play a passive role in an alleged violation or mere tacit approval thereof; a plaintiff must allege that the supervisor defendant somehow encouraged or condoned the actions of the subordinates).

### a. ADC

The ADC is not a proper Defendant. Under the Eleventh Amendment to the Constitution of the United States, a state or state agency may not be sued in federal court without its consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Furthermore, "a state is not a 'person' for purposes of section 1983. Likewise 'arms of the State' such as the Arizona Department of Corrections are not 'persons' under section 1983." *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) (citation omitted). Therefore, the Court will dismiss Defendant ADC.

### b. Official Capacity Claims

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71

(1989) (internal citation omitted). Plaintiff cannot maintain a lawsuit for damages against ADOC employees in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see also Gilbreath*, 931 F.2d at 1327 ("[A] state is not a 'person' for purposes of section 1983. Likewise 'arms of the State' such as the Arizona Department of Corrections are not 'persons' under section 1983.") (citation omitted).

Plaintiff may, however, maintain a lawsuit against ADOC employees in their official capacity for prospective injunctive relief. *See Will*, 491 U.S. at 71, n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985)); *see also Flint v. Dennison*, 488 F.3d. 816, 825 (9th Cir. 2007) ("[A] suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity."). However, "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166; *see also Los Angeles County v. Humphries*, 562 U.S. 29, 131 S. Ct. 447, 453-54 (2010) (the "'policy or custom' requirement [in *Monell*] applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective."). A plaintiff must allege, as a matter of law, that the policy or custom caused him to suffer constitutional injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006).

Here, Plaintiff asserts that he is suing Defendants "in their official capacity for damages." (Doc. 38 at 8.) However, as detailed above, Plaintiff cannot maintain claims for damages against ADC employees in their official capacities. Further, even assuming Plaintiff is requesting prospective injunctive relief in his First Amended Complaint, and although Plaintiff generally asserts that there was a "lack of training," he does not assert that any of the Defendants were acting pursuant to a specific policy or custom that caused him to suffer a constitutional injury. Therefore, the Court will dismiss Plaintiff's official

1    capacity claims.

## c. Excessive Use of Force/Fourth Amendment Claims

Plaintiff designates Count One as asserting excessive use of force and Fourth Amendment claims. When an inmate claims that prison officials violated his Eighth Amendment rights by using excessive physical force, the relevant inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). However, the Supreme Court has made it clear that not every use of physical force violates the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d [1028, 1033 (2nd Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

*Id.* at 9.

Plaintiff does not allege facts in Count One to support that any physical "force" was used against him by a Defendant, but he does allege that Marshall repeatedly strip searched him. The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and those protections are not extinguished upon incarceration. *Michenfelder v. Sumner*, 860 F.2d 328, 322-33 (9th Cir. 1988). But, the Fourth Amendment's "proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and needs and objectives of penal institutions." *Hudson v. Palmer*, 468 U.S. 517, 525-26 (l984).

Nevertheless, the Fourth Amendment has been held to apply to the invasion of bodily privacy. *Michenfelder*, 860 F.2d at 332. Thus, strip searches that are excessive, vindictive, harassing, or unrelated to any legitimate penological interest may violate the Fourth Amendment. *Id.* But a policy of routinely strip searching arrestees for contraband has been held not to be unreasonable where there is no physical contact and the searches

are professionally conducted in relative privacy. *Bull v. City and County of San Francisco*, 595 F.3d 964, 973 (9th Cir. 2010).

Plaintiff alleges that Marshall repeatedly strip searched him and made statements that suggest that he may have done so for an improper reason, particularly in light of the repeated strip searches. Plaintiff sufficiently alleges that the strip searches were excessive, vindictive, harassing, or unrelated to legitimate penological interests. The Court concludes that Plaintiff sufficiently states a claim for violation of Plaintiff's Fourth Amendment rights against Marshall in Count One.

It is unclear whether Plaintiff is attempting to assert a Fourth Amendment claim against Greene in Count One. However, to the extent that Plaintiff seeks to assert such a claim, the Court finds that Plaintiff has failed to state a claim for relief. Plaintiff asserts only that Greene told Plaintiff he would either have to strip search or "go to defecation watch" after Plaintiff told Greene about Marshall's "sexual assault." Plaintiff does not allege that he informed Greene, or that Greene otherwise knew, of the number of times that Marshall had already strip searched Plaintiff or of Marshall's statements to Plaintiff. Nor does Plaintiff allege that Greene was present for or participated in the repeated strip searches. Therefore, to the extent that Plaintiff asserts a Fourth Amendment claim against Greene, the Court will dismiss that claim.

### d. Eighth Amendment Claims

In Counts Two and Three, Plaintiff asserts Eighth Amendment threat to safety claims. To state a claim under § 1983 for threat to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). To adequately allege deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. *Id.* at 837. That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Id.*

Further, to state a claim for failure to train, a plaintiff must allege facts to support that the alleged failure amounted to deliberate indifference. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). A plaintiff must allege facts to support that not only was particular training inadequate, but also that such inadequacy was the result of "a 'deliberate' or 'conscious' choice" on the part of the defendant. *Id.* at 1213-14; *see Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (a plaintiff must allege facts to support that "in light of the duties assigned to specific officers or employees, the need for more or different training is [so] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy[]makers . . . can reasonably be said to have been deliberately indifferent to the need." (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)))

Here, Plaintiff claims that Ryan failed to protect Plaintiff from Marshall's conduct, and failed to train staff regarding the PREA. Plaintiff asserts that Greene also failed to protect Plaintiff after Plaintiff told Greene "about the sexual assault," and failed to ensure that Plaintiff and Marshall did not have further contact after Plaintiff complained. Plaintiff claims that Trotti failed to report the two subsequent strip searches of Plaintiff he witnessed by Marshall. Plaintiff asserts Branch generally had full knowledge of the "sexual assault," but "hinder[ed] prosecution" of Marshall and Greene, and failed to protect Plaintiff. However, Plaintiff fails to allege any *specific* facts to show that these Defendants knew of, and disregarded, an excessive risk to Plaintiff's safety. Plaintiff fails to allege that he told any of these Defendants, or they were otherwise aware, of the number of times Marshall strip searched Plaintiff or the comments Marshall made while initially strip searching Plaintiff. Plaintiff also fails to allege facts demonstrating that Ryan was deliberately indifferent to the need for more or different training. Plaintiff's vague reference to inadequate training is insufficient.

Finally, Plaintiff generally alleges that "inactions" by ADC "Administrators and supervisors," including Pruett and Rode, exposed Plaintiff to an assault by two inmates, and Hemsley approved Plaintiff's move "to a more dangerous restricted area." However,

Plaintiff fails to assert sufficient specific factual allegations regarding how Defendants Pruett, Rode, or Hemsley were deliberately indifferent to Plaintiff's safety. Plaintiff's general and vague allegations are insufficient. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendants.

### e. Retaliation Claims

Plaintiff also asserts claims for retaliation in Counts Two and Three of his First Amended Complaint. A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Here, to the extent Plaintiff is asserting retaliation claims against Ryan, Greene, Trotti, and/or Branch, Plaintiff fails to assert any specific facts regarding how any of these Defendants retaliated against Plaintiff. Plaintiff does not allege that any of these Defendants took an adverse action against Plaintiff because Plaintiff engaged in protected activity. Therefore, the Court will dismiss Plaintiff's retaliation claims against these Defendants.

With regard to Hemsley, Plaintiff asserts that he retaliated against Plaintiff by denying Plaintiff a kitchen job, making Plaintiff "max custody," and approving Plaintiff's move to a restricted program. However, Plaintiff fails to assert any specific facts to

support that Hemsley took any of those actions against Plaintiff because Plaintiff engaged in any protected activity. Therefore, the Court will dismiss Plaintiff's retaliation claim against Hemsley.

Plaintiff claims Rode retaliated against him by issuing Plaintiff disciplinary sanctions for assaulting six inmates, even though Rode knew that Plaintiff was the victim of an assault by the six inmates. Plaintiff claims that Rode's "actions were pre-planned to protect those [six] inmates and raise [Plaintiff's] custody level without cause." Plaintiff fails to assert any specific facts to show a connection between the discipline Rode issued Plaintiff and any protected activity by Plaintiff. Therefore, the Court will dismiss Plaintiff's retaliation claim against Rode.

Plaintiff alleges that Pruett's grievance response regarding Marshall's strip searches was an act of retaliation against Plaintiff. Plaintiff also asserts he "suffered taking my visits for 9 months and putting 'me in the Hole (CDU)' on my birthday 2 months after the incident contrary to the PREA's guidelines against retaliation." Plaintiff has failed to set forth sufficient specific factual allegations regarding Pruett's grievance response. Indeed, Plaintiff alleges that the response itself was retaliation, but does not provide any description of the response. Likewise, Plaintiff fails to allege when he filed his grievance and when Pruett responded. Further, although Plaintiff asserts that he lost visitations privileges and was put in the 'Hole' two months after Marshall strip searched him, even presuming Pruett was responsible for those actions, Plaintiff fails to allege a sufficient connection between Plaintiff's grievance and those actions. Therefore, the Court will dismiss Plaintiff's retaliation claim against Pruett.

### f. Equal Protection and Due Process Claims

Plaintiff also asserts that Rode "violated Plaintiff's equal protection and due process rights . . . by issuing Plaintiff disciplinary sanctions for assaulting six inmates, even though ADW Rode knew that Plaintiff was the victim of the assault by the six inmates."

The Equal Protection Clause requires that persons who are similarly situated be

treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 439 (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that prison officials intentionally discriminated against a plaintiff based on his membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702-03 (9th Cir. 2009), *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Lee v. City of L.A*., 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601-02, (2008), *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

"Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when he is charged with a disciplinary violation." *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolf*, 418 U.S. at 555-56. But there are certain procedural safeguards to which a prisoner facing a disciplinary hearing is entitled: (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so. *Id.* at 564-66.

Here, Plaintiff alleges that he was wrongfully disciplined for an assault because Rode wanted "to protect" the inmates who assaulted Plaintiff and raise Plaintiff's custody level "without cause." However, Plaintiff does not allege that he is a member of a protected class or that similarly situated inmates were treated differently. Likewise, Plaintiff fails to allege any facts regarding what due process he was denied with regard to his discipline. Therefore, the Court will dismiss Plaintiff's equal protection and due process claims.

### g. FTCA Claims

Finally, Plaintiff references the FTCA throughout his First Amended Complaint. However, claims under the FTCA may only be brought against the United States. 28 U.S.C. §§ 1346(b), 2679(a), (b); *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984) (individual agencies of the United States may not be sued). Further, under the statutory procedure set forth in 28 U.S.C. § 2675(a), a "tort claimant may not commence proceedings in court against the United States without first filing [the] claim with an appropriate federal agency and either receiving a conclusive denial of the claim from the agency or waiting for six months to elapse without a final disposition of the claim being made." *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992). The Ninth Circuit Court of Appeals has "repeatedly held that this 'claim requirement of section 2675 is jurisdictional in nature and may not be waived.'" *Jerves*, 966 F.2d at 519 (quoting *Burns v. United States*, 764 F.2d 722, 724 (9th Cir. 1985)).

Here, Plaintiff fails to name a proper defendant, i.e., the United States of America. Further, Plaintiff has not alleged that he has met the notice requirement. Plaintiff also fails to allege facts to support that any federal employee acting within the scope of his office or employment acted negligently such that, if a private person, the federal employee would be liable to Plaintiff in accordance with Arizona law. Therefore, the Court will dismiss Plaintiff's FTCA claims.

### V. Claims for Which an Answer Will Be Required

In Count One, Plaintiff sufficiently alleges facts to support that Marshall's repeated strip searches were excessive, vindictive, harassing, or unrelated to legitimate penological interests. The Court concludes that Plaintiff sufficiently states a claim for violation of his Fourth Amendment rights. Accordingly, the Court will require Marshall to respond to Count One, which is construed as a claim for violation of Plaintiff's Fourth Amendment rights.

### VI. Warnings

#### a. Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed *in forma pauperis*. Failure to comply may result in dismissal of this action.

### b. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### c. Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4.

If Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### d. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

Accordingly,

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion to Amend and the screening of Plaintiff's First Amended Complaint. All other matters remain referred to the Magistrate Judge for disposition as appropriate.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend (Doc. 37) is granted. The Clerk shall file Plaintiff's First Amended Complaint, lodged at Doc. 38.

**IT IS FURTHER ORDERED** that Defendants ADC, Ryan, Greene, Trotti, Pruett, Branch, Rode, and Hemsley are dismissed.

**IT IS FURTHER ORDERED** that any claims pursuant to the Prison Rape Elimination Act or Federal Tort Claims Act are dismissed.

**IT IS FURTHER ORDERED** that Defendant Marshall shall answer or otherwise respond to Count One of the First Amended Complaint within the time period prescribed by the Federal Rules of Civil Procedure.

Dated this 19th day of May, 2017.

_____
Susan R. Bolton
United States District Judge